**Elisabeth SHARP, Plaintiff,**

v.

**GOVERNMENT OF THE VIRGIN IS-LANDS, and Roy Martin, in his official capacity as Tax Assessor, Defendants.**

**No. CIV.2001–228.**

District Court, Virgin Islands,
D. St. Thomas and St. John.

Aug. 22, 2003.

James M. Derr, David E. Nichols, St. Thomas, VI, for the plaintiff.

Carol Thomas–Jacobs, St. Thomas, VI, for the defendants.

## MEMORANDUM

MOORE, District Judge.

On May 12, 2003, I found the Territory's property tax system unlawful because it "systemically employ[ed] a method of assessment not calculated to determine the actual value of properties as required by 48 U.S.C. § 1401a." *Berne Corp. v. Government of the Virgin Islands,* 262 F.Supp.2d 540, 561 (D.Vi.2003) [*Berne Corp. II* ]. Accordingly, I entered a decree in the consolidated portion of this case awarding injunctive and other such relief common to all parties. All that remains for resolution in this case is application of this decree to the unique facts posed in this individual action brought by plaintiff Elisabeth Sharp ["Sharp" or "plaintiff"], including her request for declaratory relief regarding the actual value of the parcels of real property she owns.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Sharp is a Virgin Islands resident who owns residential properties on St. Thomas known as Parcel Nos. 109 and 109–1 Estate Contant. Upon her belief that the Government was vastly overstating the value of her properties for property tax purposes, Sharp filed timely appeals of with the Board of Tax Review. Despite the fact that some of these appeals have been pending since 1996, the Board of Tax Review failed to conduct timely hearings. In fact, it was not until January 2000 that the Board of Tax Review even held a hearing on plaintiff's 1996–1999 tax bills. Moreover, even though it held this hearing in January 2000, the Board of Tax Review did not issue its purported ruling until May 7, 2002 when this case was already on-going. Having received no relief from the Board of Tax Review, plaintiff sued the defendants in this Court alleging that the Government had illegally assessed the val-

ue of her properties based on replacement value, rather than the actual value required by federal law.

At the trial of this individual case, Sharp presented much evidence in support of her valuations of her properties.[1] The Government, on the other hand, failed to produce any evidence to support the values assessed by the Tax Assessor's Office. Instead, the Government argued that the values determined by the Board of Tax Review in its May 7, 2002 decision are final values as Sharp failed to timely appeal this decision and, thus, plaintiff's case is moot. This argument, however, is unpersuasive. The Government provided no evidence that Sharp ever received this May 7, 20002 decision. As this Court has previously held, " 'receipt' of notice is not the equivalent of a letter being delivered to the correct address. In order to be 'received', a signed receipt for the notice must be obtained from either the intended recipient personally or from a lawful representative. Delivery to petitioner's mail or postal box does not so qualify." *Maloney v. Board of Tax Review*, 17 V.I. 326, 328 (D.V.I.1980).

■ Here, the Board of Tax Review mailed its May 7, 2002 decision to plaintiff's California address, an address only listed on plaintiff's 1997 appeal.[2] As the Government provided no evidence that Sharp signed for and acknowledged receipt of the Board of Tax Review's decision, I find that Sharp was never properly notified. The Government's failure to notify plaintiff is also evident from its failure to follow 33 V.I.C. § 2454(a), which requires that every decision by the Board of Tax Review be recorded by the Lieutenant Governor. As plaintiff never received notice of the Board of Tax Review's decision, she was well within her rights to seek relief in this Court "since, technically speaking, [s]he never 'received' notice from the Board." *Id.* As this Court has the authority "to modify, reverse or affirm the decision of the Board of Tax Review", I shall vacate the Board's May 7, 2002 decision. *See* 33 V.I.C. § 2453(c).

■ With no evidence to justify the Tax Assessor's assessments, I find plaintiff's testimony to be credible and the Government's testimony self-serving and incredible. Accordingly, I incorporate my earlier findings from the consolidated portion of this case by reference, find that "the system of assessment as presently established and operated by the Tax Assessor is structurally incapable of equitably and reliably implementing the federal statutory mandate of taxing all real property on its actual value," *see Berne II*, 262 F.Supp.2d at 555, and, in actual application to plaintiff's properties, has failed to produce reliable or equitable assessments of their actual or fair market values. Thus, all that remains is to determine a suitable remedy for plaintiff's respective properties.

## II. REMEDIES

### A. 109–1 Estate Contant

The following chart demonstrates the assessed values and tax liability for the 109–1 Estate Contant as well as plaintiff's own appraised values and proposed tax liability for her 1996–2001 tax bills.

---

**1.** Sharp also presented a 1995 letter by Verne Callwood, the then Tax Assessor, acknowledging a refund of $1,937.57 owed to plaintiff for the overpayment of her 1992 tax bill. (Plt.'s Ex. 3.) Despite the passage of nearly eight years, the Government has failed to refund this money. (Anderson Test., Jan. 23, 2003, at 235–236.)

**2.** Sharp provided the Board of Tax Review with a local St. Thomas address for all other appeals.

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1996 | $104,578.66 | $66,300.00 | $784.34 | $497.25 | $287.09 |
| 1997 | $115,036.66 | $66,300.00 | $784.34 | $497.25 | $287.09 |
| 1998 | $430,061.66 | $66,300.00 | $784.34 | $497.25 | $287.09 |
| | | | | Total | $861.27 |
| 1999 | $461,338.00 | $66,300.00 | $784.34 | $497.25 | $287.09 |
| 2000 | $461,338.00 | $66,300.00 | $784.34 | $497.25 | $287.09 |
| 2001 | $461,338.00 | $66,300.00 | $ 0.00 | $497.25 | $ 0.00 |
| | | | | Total | $574.18 |

Having reviewed the testimony and evidence presented by Sharp, and noting the inability of the Government to produce any evidence to support its values, I find her values to be credible and the Government's values to be overinflated and not credible. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values provided by Sharp for the 1996–1998 tax bills are the actual values for those tax years. Moreover, I find that Sharp has overpaid her property taxes for those years and is entitled to a refund of $861.27 plus interest at the statutory rate of 12 percent from the date each tax bill was paid.

Finally, for the 1999 tax bill and beyond, I will accept Sharp's proffered values as good faith estimates of her tax obligations and order the Government to treat these values as the assessed values of 109–1

Estate Contant until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As Sharp has already paid her 1999 and 2000 tax bills at the Government's assigned values, she is entitled to a credit of $574.18 plus interest at the statutory rate of 12 percent from the date each tax bill was paid. The Government may not apply this credit to any future property tax obligation without Sharp's consent. The Government may, however, chose to refund this credit and interest to her.

## B. 109 Estate Contant

The following chart demonstrates the assessed values and tax liability for the 109 Estate Contant as well as plaintiff's own appraised values and proposed tax liability for her 1996–2001 tax bills.

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1996 | $1,119,982 | $293,000 | $5,632.21 | $2,197.50 | $ 3,434.71 |
| 1997 | $1,231,981 | $293,000 | $7,464.52 | $2,197.50 | $ 5,267.02 |
| 1998 | $1,009,131 | $293,000 | $7,434.52 | $2,197.50 | $ 5,237.02 |
| | | | | Total | $13,938.75 |
| 1999 | $1,804,204 | $293,000 | $7,434.52 | $2,197.50 | $ 5,237.02 |
| 2000 | $1,804,204 | $293,000 | $8,181.66 | $2,197.50 | $ 5,984.16 |
| 2001 | $1,804,204 | $293,000 | $ 0.00 | $2,197.50 | $ 0.00 |
| | | | | Total | $11,221.18 |

Having reviewed the testimony and evidence presented by Sharp, and noting the inability of the Government to produce any evidence to support its values, I find her values to be credible and the Government's values to be overinflated and not credible. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values provided by Sharp for the 1996–1998 tax bills are the actual values for those tax years. Moreover, I find that Sharp has overpaid her property taxes for those years and is entitled to a refund of $13,938.75 plus interest at the statutory rate of 12 percent from the date each tax bill was paid.

Finally, for the 1999 tax bill and beyond, I will accept Sharp's proffered values as good faith estimates of her tax obligations and order the Government to treat these values as the assessed values of 109–1 Estate Contant until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As Sharp has already paid her 1999 and 2000 tax bills at the Government's assigned values, she is entitled to a credit of $11,221.18 plus interest at the statutory rate of 12 percent from the date each tax bill was paid. The Government may not apply this credit to any future property tax obligation without Sharp's consent. The Government may, however, chose to refund this credit and interest to her.

## DECREE

Having considered the entire record in this matter, including the testimony and documentary evidence presented at the trial on January 23, 2003, and based on the Memorandum of even date, it is hereby,

**DECREED** that the Tax Assessor's Office has failed to assess and tax the litigated property of plaintiff at its actual value.

The Court further enters the following remedial orders:

**ORDERED** that 109–1 Estate Contant shall have a value of $66,300.00 and a tax liability of $497.25 for its 1996 tax bill, a value of $66,300.00 and a tax liability of $497.25 for its 1997 tax bill, a value of $66,300.00 and a tax liability of $497.25 for its 1998 tax bill, a value of $66,300.00 and a tax liability of $497.25 for its 1999 tax bill, a value of $66,300.00 and a tax liability of $497.25 for its 2000 tax bill, and a value of $66,300.00 and a tax liability of $497.25 for its 2001 tax bill; it is further

**ORDERED** plaintiff Elisabeth Sharp is entitled to a refund of $287.09 for the overpayment of her 1996 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $287.09 for the overpayment of her 1997 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $287.09 for the overpayment of her 1998 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a credit of $287.09 for her overpayment of her 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment, and a credit of $287.09 for her overpayment of her 2000 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; it is further

**ORDERED** that 109 Estate Contant shall have a value of $293,000.00 and a tax liability of $2,197.50 for its 1996 tax bill, a value of $293,000.00 and a tax liability of $2,197.50 for its 1997 tax bill, a value of

$293,000.00 and a tax liability of $2,197.50 for its 1998 tax bill, a value of $293,000.00 and a tax liability of $2,197.50 for its 1999 tax bill, a value of $293,000.00 and a tax liability of $2,197.50 for its 2000 tax bill, and a value of $293,000.00 and a tax liability of $2,197.50 for its 2001 tax bill; it is further

**ORDERED** plaintiff Elisabeth Sharp is entitled to a refund of $3,434.71 for the overpayment of her 1996 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $5,267.02 for the overpayment of her 1997 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $5,237.02 for the overpayment of her 1998 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a credit of $5,237.02 for her overpayment of her 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment, and a credit of $5,984.16 for her overpayment of her 2000 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; and it is further

**ORDERED** that the values and tax liabilities for plaintiff's properties for their tax bills up to and including 1998 are the actual values and tax liabilities. The values and tax liabilities for plaintiffs' properties for their tax bills from 1999 and later shall remain in effect until such time as the Special Master certifies the Territory's property tax system will produce credible and reliable actual values.